COMMONWEALTH of Pennsylvania,
Appellee

v.

Richard BRICKER, Sr., Appellant

Superior Court of Pennsylvania.

Submitted May 9, 2005.
Filed Sept. 2, 2005.

Mark M. Mehalov, Uniontown, for appellant.

Nancy D. Vernon, Assistant District Attorney, Uniontown, for Commonwealth, appellee.

Before: LALLY–GREEN, POPOVICH and JOHNSON, JJ.

OPINION BY POPOVICH, J.:

¶ 1 In this consolidated appeal, Appellant Richard Bricker, Sr., appeals the judgments of sentence entered November 24, 2004, in the Fayette County Court of Common Pleas. Upon review, we affirm the judgment of sentence on appeal at 2106 WDA 2004. On appeal at 2108 WDA 2004, we affirm in part and vacate in part the judgment of sentence and remand for a new trial.

¶ 2 On July 2, 2003, police officers of the Connellsville Police Department executed a search warrant on Appellant's residence located at 131 Marshall Street in Trotter, Fayette County. Appellant was present in the residence during the search. The police confiscated the following items which were found on Appellant's person: a crack pipe, a rod used for cleaning a crack pipe, a filter for a crack pipe, and an electronic scale. A search of the residence produced various items associated with the selling of narcotics, such as plastic baggies without corners and owe sheets. Eight grams of crack cocaine and 1.4 grams of marijuana were also found in the residence. In addition to Appellant, Ramone Taylor, Eric Gallagher, and Richard Bricker, Jr., Appellant's son, were present in the residence during the search. Taylor was searched, and four grams of crack cocaine and $1,296.00 in United States currency were found on his person.

¶ 3 On September 5, 2003, officers of the Connellsville Police Department executed a second search warrant on Appellant's residence. As police entered the residence, they witnessed James MacVellan Hinton throw a paper towel containing 14 individually wrapped rocks of cocaine totaling 5.3 grams on the living room floor. The police searched Hinton and found $1,382.24 in United States currency on his person. Appellant was in the doorway when the police entered the residence, and, following a search of his person, the police found three individually wrapped rocks of crack cocaine totaling 0.37 grams, a crack pipe, a crack pipe screen, $20.00 in United States currency, and a plastic baggie without corners. Appellant's son was also present inside the residence, and the police found one rock of crack cocaine on his person.

¶ 4 Arising from the July 2, 2003 search, Appellant was charged at Criminal Complaint No. 1661 of 2003 with four counts of

possessing drug paraphernalia[1] and one count each of possession of a controlled substance (crack cocaine),[2] possession of a controlled substance with an intent to deliver (PWID) (crack cocaine),[3] criminal conspiracy,[4] and possession of a small amount of marijuana for personal use.[5] Arising from the September 5, 2003 search, Appellant was charged at Criminal Complaint No. CP–26–CR–0001662–2003 with one count each of possession of a controlled substance (crack cocaine), PWID (crack cocaine), and criminal conspiracy.

¶ 5 The two cases were consolidated for a single jury trial, and, following the trial, Appellant was convicted of all counts charged. On November 24, 2004, Appellant was sentenced to one to five years of imprisonment and ordered to pay fines and costs for his convictions at Criminal Complaint No. 1661 of 2003. Appellant was also sentenced to a consecutive term of one to five years of imprisonment and ordered to pay fines and costs for his convictions at Criminal Complaint No. CP–26–CR–0001662–2003. Appellant filed timely appeals from both judgments of sentence. The appeal from the judgment of sentence from Appellant's convictions at Criminal Complaint No. 1661 of 2003 was docketed at 2106 WDA 2004. The appeal from the judgment of sentence from Appellant's convictions at Criminal Complaint No. CP–26–CR–0001662–2003 was docketed at 2108 WDA 2004. The trial court ordered Appellant to file a statement pursuant to Pa.R.A.P.1925(b), and Appellant complied. The trial court filed an opinion. On January 5, 2005, we consolidated these appeals *sua sponte.*

¶ 6 On appeal, Appellant presents the following questions for our review:

I. Whether the Commonwealth failed to present sufficient evidence to sustain the verdicts of the jury?

A. Whether the Commonwealth failed to present sufficient evidence for the possession and possession with intent to deliver charges allegedly occurring on July 2, 2003?

B. Whether the Commonwealth failed to present sufficient evidence for the possession with intent to deliver charge allegedly occurring on September 5, 2003?

C. Whether the Commonwealth failed to present sufficient evidence for the criminal conspiracy charges?

II. Whether the trial court erred in overruling defense counsel's objection to the Commonwealth's questions to Appellant regarding how and where he obtained crack cocaine for personal use?

III. Whether the trial court erred in permitting the Commonwealth to amend the information at [CP–26–CR–0001662–2003], possession with intent to deliver, during the Appellant's motion for judgment of acquittal after the Commonwealth had presented its case in chief?

Appellant's brief, at 4.

¶ 7 Appellant argues first that the evidence was insufficient to support his conviction of possession of crack cocaine for the July 2, 2003 incident because the Commonwealth did not prove that Appellant possessed a total of eight grams of crack cocaine that was found in his residence. We disagree.

---

1. 35 P.S. § 780–113(a)(32).

2. 35 P.S. § 780–113(a)(16).

3. 35 P.S. § 780–113(a)(30).

4. 18 Pa.C.S.A. § 903(a)(1).

5. 35 P.S. § 780–113(a)(31).

¶ 8 The standard of review for sufficiency of the evidence claims is well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Pappas,* 845 A.2d 829, 835–36 (Pa.Super.2004) (citation omitted).

¶ 9 As the drugs were not found on Appellant's person, the Commonwealth was required to establish that he constructively possessed the crack cocaine. Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. *Commonwealth v. Petteway,* 847 A.2d 713, 716 (Pa.Super.2004). Constructive possession may be established by the totality of the circumstances. *Commonwealth v. Parker,* 847 A.2d 745, 750 (Pa.Super.2004). We have held that circumstantial evidence is reviewed by the same standard as direct evidence—a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Johnson,* 818 A.2d 514, 516 (Pa.Super.2003) (citations omitted)

¶ 10 The evidence presented at trial was sufficient to establish Appellant's constructive possession of eight grams of crack cocaine. First, Appellant lived at the residence located at 131 Marshall Street in July 2003. N.T., 10/5/04, at 77–78. When the police searched the residence on July 2, 2003, a National City bank statement addressed to Appellant was found as an indication of residency. *Id.,* at 25. Second, Appellant was present in the kitchen when the police entered the residence. *Id.,* at 15. The eight grams of crack cocaine were found on the kitchen floor, on a couch in a living room, which was the room adjacent to the kitchen, and in an upstairs bedroom of the residence. *Id.,* at 16, 33, and 38. Although some of the drugs were found in rooms other than the kitchen in which Appellant was present at the time of the search, Appellant was discovered with a crack pipe, a rod used for cleaning a crack pipe, a filter for a crack pipe, and an electronic scale on his person. *Id.,* at 19–20. Finally, Appellant admits that he was a user of crack cocaine in July 2003. *Id.,* at 161. We conclude that this evidence was sufficient to establish Appellant's ability to control the crack cocaine found in his residence and his intent to exercise such control. *See Petteway,* 847 A.2d at 716 (holding evidence was sufficient to prove constructive possession

even though defendant and drugs were found in different rooms of same residence); *see also Commonwealth v. Walker*, 874 A.2d 667, 668 (Pa.Super.2005) (holding evidence was sufficient to prove constructive possession where drugs and drug paraphernalia were found in basement where defendant admitted to reside and where mail addressed to defendant was found). Therefore, we find that the Commonwealth produced sufficient evidence to demonstrate Appellant's constructive possession of the crack cocaine found in his residence on July 2, 2003.[6]

¶ 11 Appellant also argues that there was insufficient evidence presented at trial to sustain his conviction of PWID 5.67 grams of crack cocaine for the September 5, 2003 incident. We disagree.[7]

¶ 12 To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. *Commonwealth v. Conaway*, 791 A.2d 359, 362 (Pa.Super.2002). In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence. *Commonwealth v. Drummond*, 775 A.2d 849, 853–54 (Pa.Super.2001) (citation omitted). Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Commonwealth v. Kirkland*, 831 A.2d 607, 610 (Pa.Super.2003) (citation omitted).

¶ 13 Viewing all the evidence in the light most favorable to the Commonwealth, we find that there was sufficient evidence presented to convict Appellant of PWID for the September 5, 2003 incident. During the search of Appellant's residence, the police found 0.37 grams of crack cocaine in Appellant's pocket. N.T., 10/4/05, at 45. The 0.37 grams of crack cocaine were packaged as three rocks individually wrapped in clear plastic baggie corners. *Id.*, at 45 and 145. The police also found a baggie without corners on Appellant's person. *Id.*, at 49. Officer Ronald J. Haggerty, Jr., of the Connellsville Police Department, testified that baggies without corners are indicative of packaging crack cocaine for sale. *Id.*, at 122. Furthermore, Appellant was in close proximity to Hinton when the police found a large sum

---

**6.** Appellant also states that the Commonwealth failed to present any evidence regarding his intent to deliver the crack cocaine found in his residence on July 2, 2003. However, Appellant fails to develop an argument on this point beyond making this bald statement. Therefore, we find this issue waived. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n. 2 (Pa.Super.2002) (citation omitted).

**7.** In the original Criminal Complaint No. CP–26–CR–0001662–2003, Appellant was charged with PWID 0.37 grams of crack cocaine. During trial, following the Commonwealth's presentation of its case-in-chief, it moved to amend the bill of information to charge Appellant with PWID 5.67 grams of crack cocaine. The trial court granted the Commonwealth's request, but this ruling was in error for the reasons set forth *infra*. Notwithstanding the trial court's erroneous ruling, we address Appellant's argument that there was insufficient evidence to sustain his conviction of PWID 5.67 grams of crack cocaine because Appellant's challenge to the amendment to Criminal Complaint No. CP–26–CR–0001662–2003 is separate from his claim that the evidence was insufficient to convict him of PWID 5.67 grams of crack cocaine. *See Commonwealth v. Sanford*, 580 Pa. 604, 863 A.2d 428, 431–32 (2004) (appellate court must examine all evidence, regardless of admissibility, when determining sufficiency of the evidence claim because sufficiency of evidence is not assessed upon a diminished record) (citation omitted).

of cash on Hinton's person and when the police found a paper towel containing 14 individually wrapped rocks of crack cocaine on the living room floor near Hinton. *Id.*, at 44–45. Moreover, the Commonwealth presented evidence that, on at least twelve occasions in the month prior to and including September 5, 2003, Hinton left crack cocaine at Appellant's residence for Appellant and his son to sell for him in exchange for money. *Id.*, at 107. This evidence, albeit circumstantial, was sufficient for the jury to infer that Appellant sold crack cocaine out of his residence for Hinton and that Appellant possessed the 0.37 grams of crack cocaine with the intent to deliver.

 ¶ 14 Regarding the 5.3 grams of crack cocaine found near Hinton on the floor of Appellant's residence, Appellant argues that the Commonwealth did not provide sufficient evidence to demonstrate that he constructively possessed the crack cocaine. As we stated previously, constructive possession requires proof of the ability to exercise conscious dominion over the illegal substance, the power to control that contraband, and the intent to exercise such control. *Petteway*, 847 A.2d at 716. The intent to exercise conscious dominion can be inferred from the totality of the circumstances. *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super.2005). "[W]here more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." *Commonwealth v. Rippy*, 732 A.2d 1216, 1220 (Pa.Super.1999) (citation omitted). "[Rather], the Commonwealth must introduce evidence demonstrating either Appellant's participation in the drug-related activity or evidence connecting Appellant to the specific room or areas where the drugs were kept." *Id.*, 732 A.2d at 1220.

¶ 15 Appellant was an admitted drug addict, and he lived at the residence where the 5.3 grams of crack cocaine were found on the floor. N.T., 10/5/04, at 161–62. Prior to September 5, 2003, Appellant had been arrested for selling crack cocaine out of his home. Evidence was presented that Hinton left crack cocaine at Appellant's residence for Appellant and his son to sell for him in exchange for money on at least twelve occasions. *Id.*, at 107. It is well-settled that two actors may have joint control and equal access to contraband, and, thus, both may constructively possess the contraband. *Jones*, 874 A.2d at 121. Therefore, even though the police witnessed Hinton throw the 5.3 grams of crack cocaine to the floor when they entered the residence, it was reasonable for the jury to infer that Appellant and Hinton had joint constructive possession of the crack cocaine because Appellant was selling crack cocaine for Hinton out of Appellant's residence. As such, taking into account the totality of the circumstances, we find that the Commonwealth provided sufficient evidence to prove that Appellant constructively possessed 5.3 grams of crack cocaine found near Hinton on the floor of Appellant's residence. *See Commonwealth v. Miley*, 314 Pa.Super. 88, 460 A.2d 778, 784 (1983) (intent to exercise control over controlled substance may be established by knowledge of its presence); *see also Commonwealth v. Nelson*, 399 Pa.Super. 618, 582 A.2d 1115, 1119 (1990) (constructive possession may be found where no individual factor establishes possession but the totality of circumstances infer such); *Commonwealth v. Smith*, 250 Pa.Super. 460, 378 A.2d 1239, 1242 (1977) (defendant's admission that he was a drug addict reinforces inference that defendant constructively possessed heroin). Accordingly, as we have found that the Commonwealth presented evidence that demonstrated that Appellant possessed the 0.37

grams of crack cocaine found on his person and the 5.3 grams of cocaine found on the floor of his residence, we find that there was sufficient evidence to support Appellant's PWID conviction for the September 5, 2003 incident.

¶ 16 Appellant also argues that the Commonwealth failed to present sufficient evidence to support his convictions of criminal conspiracy to commit PWID on July 2, 2003, and on September 5, 2003, because the Commonwealth did not provide evidence of an overt act. We disagree.

¶ 17 To sustain a conviction of criminal conspiracy:

The Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act done in furtherance of the conspiracy. Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Additionally[,] an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Jones,* 874 A.2d at 121–22 (internal citations and quotation marks omitted).

¶ 18 Regarding the July 2, 2003 conviction, Appellant was charged with conspiring with his son and Taylor to commit PWID crack cocaine. Appellant, his son, and Taylor were present in the residence during the police search. N.T., 10/5/04, at 15–17. Gallagher testified that he bought crack cocaine from Appellant's son on July 2, 2003. *Id.,* at 84. Gallagher also testified that three individuals, one of which was Taylor, sold crack cocaine out of Appellant's residence on that day. *Id.,* at 81. We have held that an overt act need not be committed by the defendant; it need only be committed by a co-conspirator. *Commonwealth v. Hennigan,* 753 A.2d 245, 253 (Pa.Super.2000). Thus, Appellant's son selling crack cocaine on July 2, 2003, and Taylor's selling crack cocaine out of Appellant's residence that day was sufficient to serve as the overt act of the conspiracy. Therefore, it was reasonable for the jury to infer that Appellant conspired with his son and Taylor to commit PWID crack cocaine. Accordingly, the Commonwealth presented sufficient evidence of a criminal conspiracy on July 2, 2003, and the record supports Appellant's conspiracy conviction.

¶ 19 The Commonwealth also presented sufficient evidence of an overt act to sustain Appellant's conspiracy conviction for the September 5, 2003 incident. Appellant was charged with conspiring with his son and Hinton to commit PWID crack cocaine. Appellant, his son, and Hinton, were present in the residence during the police search on September 5, 2003. N.T., 10/5/04, at 41–42. The police found $1,382.24 in United States currency on Hinton's person and 14 individually wrapped plastic baggies of crack cocaine on the floor of the residence near Hinton. *Id.,* at 144. At least twelve times in the month prior to September 5, 2003, Desiree Pirl witnessed Hinton leave crack cocaine at Appellant's residence. *Id.,* at 107. Pirl testified that Hinton would divide a large amount of crack cocaine into smaller amounts for Appellant and his son to sell.

*Id.,* at 102. It was reasonable for the jury to infer that Appellant conspired with his son and Hinton to deliver drugs, and that the overt act was Hinton leaving an amount of crack cocaine at Appellant's residence for Appellant and his son to sell. *See Commonwealth v. Murphy,* 795 A.2d 1025, 1039 (Pa.Super.2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). Thus, there was sufficient evidence to support Appellant's criminal conspiracy conviction for September 5, 2003.

¶ 20 Appellant's second argument is that the trial court erred when it overruled Appellant's objections to two questions which the Commonwealth posed to Appellant on cross-examination regarding the price he paid for his crack cocaine. Appellant argues that these questions violated his privilege against self-incrimination and that the questioning was beyond the scope of direct examination. We disagree.

¶ 21 During the trial, Appellant testified on his own behalf. On direct examination, Appellant explained that he was an abuser of crack cocaine and that he resided at 131 Marshall Street in July 2003 and September 2003. N.T., 10/5/04, at 161–62. On cross-examination, the Commonwealth questioned Appellant whether he was employed in September 2003. *Id.,* at 163. Appellant answered that he was not employed at that time and that his sole source of income was Social Security benefits. *Id.,* at 163. The Commonwealth asked Appellant how much crack cocaine he used during that period, and Appellant stated that he smoked "[a] good bit, put it to you that way, twenty-four [hours a day,] seven [days a week]." *Id.,* at 163. The Commonwealth then questioned Appellant re-

garding the price that he paid for the crack cocaine and whether he performed any services in exchange for the crack cocaine. *Id.,* at 164–65. Appellant replied that he performed various tasks in exchange for the drugs, such as repairing and washing his drug dealers' cars and selling crack cocaine for his dealers. *Id.,* at 164–65. Appellant's counsel objected to the questions about the price Appellant paid for the crack cocaine and the services he performed to obtain the crack cocaine on the basis that the Commonwealth's questions were beyond the scope of his direct examination. *Id.,* 164–65. These objections were overruled by the trial court. *Id.,* at 164–65.

¶ 22 Initially, we note that Appellant did not assert his privilege against self-incrimination when the Commonwealth posed the questions at issue, and Appellant's counsel did not object to the line of questioning on the basis that the questioning violated Appellant's privilege against self-incrimination. Therefore, Appellant's argument that the line of questioning violated his privilege against self-incrimination is waived. *See Commonwealth v. Edwards,* 762 A.2d 382, 387 n. 2 (Pa.Super.2000) (assertion of privilege against self-incrimination waived when appellant fails to object to trial court's questioning when under no compulsion to answer).

¶ 23 However, Appellant's counsel did object to the Commonwealth's questioning on the basis that the questions were beyond the scope of direct examination. A challenge to the extent of cross-examination is governed by the following principles:

> [W]e note that in cross-examining a witness, an attorney is entitled to question the witness about subjects raised during direct examination as well as any facts tending to refute inferences arising from

matters raised during direct testimony.... Similarly, an attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with his testimony.... However, the scope and limits of cross-examination [are] vested in the trial court's discretion and that discretion will not be reversed unless the trial court has clearly abused its discretion or made an error of law.

*Commonwealth v. Begley,* 566 Pa. 239, 276–77, 780 A.2d 605, 627 (2001) (internal citations omitted).

¶ 24 After reviewing the transcript, we find the trial court did not err by allowing the Commonwealth's cross-examination with respect to the issue of Appellant's drug use. Appellant testified on direct examination that he was an abuser of crack cocaine. On cross-examination, the Commonwealth merely sought to elicit how Appellant acquired his crack cocaine. The Commonwealth's questions regarding the methods Appellant used to acquire his crack cocaine were within the scope of proper cross-examination because they concerned a subject Appellant testified about in his direct examination—his own drug abuse. Therefore, the trial court did not abuse its discretion by overruling counsel's objections. *See Commonwealth v. J.F.,* 800 A.2d 942, 947 (Pa.Super.2002) (finding trial court did not abuse its discretion by permitting cross-examination questioning which was within scope of direct examination).

¶ 25 Appellant's final argument is that the trial court erred by permitting the Commonwealth to amend the bill of information regarding the charges at Criminal Complaint No. CP–26–CR–0001662–2003 after the Commonwealth presented its case-in-chief. We agree.

¶ 26 Pennsylvania Rule of Criminal Procedure 564 states:

The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as necessary in the interests of justice.

Pa.R.Crim.P. 564.[8]

¶ 27 We have stated that the purpose of Rule 564 "is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Davalos,* 779 A.2d 1190, 1194 (Pa.Super.2001) (citation omitted). The test to be applied is:

[W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Id.,* 779 A.2d at 1194 (citation omitted).

¶ 28 In the present case, the original information at Criminal Complaint No.

8. Rule 564 was numbered previously as Rule 229.

CP–26–CR–0001662–2003 charged Appellant with PWID 0.37 grams of cocaine found on his person. During the Commonwealth's case-in-chief, Officer Haggerty opined that the 14 individually wrapped rocks of crack cocaine found on the living room floor of Appellant's residence near Hinton were possessed for delivery and sale. N.T., 10/4/04, at 127–28 and 129–30. Later, on cross-examination, Officer Haggerty admitted that the 0.37 grams of crack cocaine found on Appellant's person could be consistent with personal use. *Id.,* at 134.

¶ 29 At the close of the Commonwealth's case, Appellant's counsel moved for a judgment of acquittal on the PWID charge because Officer Haggerty testified that possession of 0.37 grams was consistent with personal use and that the drug paraphernalia found on Appellant's person was also consistent with personal use. N.T., 10/4/04, at 157. The following exchange then occurred:

> Commonwealth: I am going to request that the Court deny the motion based upon his testimony and ask the Court to amend the amount in the information to reflect trial evidence to include the amount of the fourteen baggies of cocaine found on James MacVellan Hinton [five] point three grams and the cocaine that was in [Appellant's] pocket was point three seven, [for a total of] five point sixty-seven grams.

> Appellant's counsel: Your Honor, can I respond briefly and I will argue again that the Commonwealth alluded to an amount in the information, specifically since I did ask [Officer Haggerty] regarding that amount being in [Appellant's] possession.

> \* \* \* \* \* \*

> The Court: I will overrule the objection and permit the amendment since it is consistent with the testimony presented at trial.

*Id.,* at 157–58.[9]

¶ 30 As the preceding transcript excerpt illustrates, the Commonwealth's amendment increased the amount of crack cocaine alleged in Appellant's PWID charge by 5.3 grams to bring the total amount charged from 0.37 grams to 5.67 grams. The trial court permitted the amendment because it found that the amendment did not change the elements of the PWID charge. Trial court opinion, 12/23/04, at 3. However, we find that the addition of 5.3 grams of crack cocaine that was found on the floor of Appellant's residence near Hinton presents a substantially different factual situation than that which the Commonwealth charged initially. The 0.37 grams of crack cocaine charged in the original information · represented the amount of crack cocaine found on Appellant's person. By adding the crack cocaine found on the floor of Appellant's residence to the total amount charged, the Commonwealth accused Appellant of constructive possession of the additional 5.3 grams of crack cocaine with the intent to deliver. Therefore, as the 5.3 grams were not included in the original information, Appellant did not have knowledge of the alleged

---

9. At the original Criminal Complaint No. CP–26–CR–0001662–2003, the Commonwealth alleged that Appellant possessed both 0.37 grams of crack cocaine and PWID 0.37 grams of crack cocaine. When the Commonwealth's request to amend the information is read in context with Appellant's counsel's motion for judgment of acquittal on the PWID charge, we conclude that the request to amend the information was limited to the PWID charge only and did · not include the possession charge. Our conclusion is buttressed by the Commonwealth's failure to reference the possession charge specifically. Therefore, we confine our analysis to the issue of whether the trial court abused its discretion in permitting the Commonwealth to amend the PWID charge at the close of its case-in-chief.

criminal conduct prior to trial. As such, the amendment was in violation of Rule 564.

¶ 31 Having determined that a violation of Rule 564 occurred, we must next determine whether the violation prejudiced Appellant by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges. *See Commonwealth v. Brown*, 556 Pa. 131, 135, 727 A.2d 541, 543 (1999) (holding amendment violating Rule 554 only fatal when variance between original and new charges prejudices appellant). Appellant argues that he was prejudiced by the amendment because it was his trial strategy to argue that 0.37 grams of crack cocaine was such a small amount to possess that it was merely for personal use and not intended for delivery. *See* N.T., 10/4/04, at 157 and Appellant's brief, at 13. We agree that the addition of 5.3 grams of crack cocaine to the PWID charge rendered Appellant's personal use defense virtually ineffective. It is unlikely that an argument that Appellant possessed the 0.37 grams of crack cocaine plus the 5.3 grams of individually wrapped rocks of crack cocaine for personal use would prevail at trial considering that the Commonwealth's expert opined that the 5.3 grams were possessed with the intent to deliver. *Id.*, at 128. Therefore, Appellant's defense that he possessed 0.37 grams of crack cocaine for personal use was no longer a viable defense to PWID after the amendment. Thus, the amendment prejudiced Appellant. *Brown*, at 137–38, 727 A.2d at 544–

45 (amendment caused appellant to suffer prejudice by rendering primary defense a nullity).

¶ 32 Furthermore, PWID crack cocaine in excess of two grams carries a mandatory minimum sentence to which Appellant was sentenced. *See* 18 Pa.C.S.A. § 7508(a)(3)(i). PWID less than two grams of crack cocaine does not qualify for a mandatory minimum sentence. As the amendment caused the total amount of crack cocaine to be in excess of two grams, the amendment subjected Appellant to a greater sentence because a mandatory minimum applied to his conviction for the greater amount. Therefore, as the amendment exposed Appellant to a risk of a greater sentence and effectively eliminated Appellant's personal use defense, we find that Appellant was prejudiced by the amendment. As such, the trial court abused its discretion when it permitted the Commonwealth to amend the information at the close of its case-in-chief.[10]

¶ 33 As we have found that there was sufficient evidence to support Appellant's convictions for the July 2, 2003 incident, we affirm the judgment of sentence on appeal at 2106 WDA 2004.

¶ 34 Regarding the appeal at 2108 WDA 2004, we have found that there was sufficient evidence to support Appellant's conviction of PWID crack cocaine for the September 5, 2003 incident but that the trial court abused its discretion by permitting the Commonwealth to amend Criminal Complaint No. CP–26–CR–0001662–2003. Accordingly, we vacate the PWID convic-

---

**10.** We note further that the Commonwealth found both the 0.37 grams of crack cocaine on Appellant's person and the 5.3 grams of crack cocaine contained in 14 individually wrapped packages during the search of Appellant's residence on September 5, 2003. Therefore, if the Commonwealth sought to charge Appellant with PWID the additional 5.3 grams, the evidence was available for the Commonwealth to amend the amount of crack cocaine alleged in the information *prior* to trial. An amendment prior to trial would have notified Appellant of the actual crimes charged against him, and, thus, he would have the opportunity to strategize viable defenses to those crimes.

tion and order a new trial as to that charge. We also affirm Appellant's judgment of sentence as to the possession of a controlled substance and criminal conspiracy convictions at 2108 WDA 2004.

¶ 35 At 2106 WDA 2004, judgment of sentence affirmed.

¶ 36 At 2108 WDA 2004, judgment of sentence affirmed in part and vacated in part. Case remanded for new trial. Jurisdiction relinquished.