J-S06002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN PRECCIA, | |
| Appellant | No. 452 EDA 2013 |

Appeal from the Judgment of Sentence Entered January 28, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011678-2012

BEFORE: BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED FEBRUARY 02, 2015**

Appellant, Kevin Preccia, appeals from the judgment of sentence of an aggregate term of three to six years' incarceration, imposed after he was convicted of possession of a controlled substance, possession with intent to deliver a controlled substance (PWID), and conspiracy to commit PWID. Appellant challenges the sufficiency of the evidence to sustain his convictions. We affirm.

Appellant was charged with the above-stated offenses and proceeded to a nonjury trial on December 11, 2012. At the close thereof, the court convicted Appellant of all offenses with which he was charged. On January 28, 2013, he was sentenced to a term of three to six years' imprisonment

_____

[*] Former Justice specially assigned to the Superior Court.

for PWID, and a concurrent term of three to six years' imprisonment for conspiracy to commit PWID. His conviction for possession of a controlled substance merged with his PWID offense for sentencing purposes. Appellant filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents one question for our review:

> Did the trial court err when it found that there was sufficient evidence to prove beyond a reasonable doubt that Appellant … was guilty of the criminal offenses of [PWID], criminal conspiracy and knowing and intentional possession of a controlled substance?

Appellant's Brief at 2 (unnecessary capitalization omitted).

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno**, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell**, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011).

We will first address Appellant's challenges to the sufficiency of the evidence to sustain his possession of a controlled substance and PWID

- 2 -

offenses. In regard to both offenses, Appellant argues that the evidence failed to prove that he constructively possessed narcotics.

> Constructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. **Commonwealth v. Petteway**, 847 A.2d 713, 716 (Pa. Super. 2004). Constructive possession may be established by the totality of the circumstances. **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa. Super. 2004). We have held that circumstantial evidence is reviewed by the same standard as direct evidence—a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Johnson**, 818 A.2d 514, 516 (Pa. Super. 2003) (citations omitted).

**Commonwealth v. Bricker**, 882 A.2d 1008, 1014 (Pa. Super. 2005).

In concluding that the evidence was sufficient to prove that Appellant constructively possessed drugs (and did so with the intent to deliver them), the trial court relied on the following facts, which Appellant does not dispute:

> The evidence established that on September 14[,] 2012, between approximately 8:00 p.m. to 9:00 p.m., Philadelphia Police conducted surveillance on the 3300 block of Mount Vernon Street in Philadelphia to investigate illegal narcotics activity. During the surveillance, Officer [Barry] Stewart testified that he observed two (2) males on location, one of the males was identified as [] Appellant, … and the second male was identified as [Jefferson] Young. [Appellant] … and Young were together and were standing in the street/sidewalk within a hand's length from each other. Officer Stewart further observed [Appellant] and Young speaking with one another and engaging in conversations with the buyers involved in the observed drug transactions.
>
> Two (2) drug transactions took place during the surveillance. The first transaction was observed at approximately 8:20 p.m. At that time, Officer Stewart saw a black male, later identified as Oral Bolten, approach …

- 3 -

[Appellant] and Young and engage them in a brief conversation. Mr. Bolten then gave an unknown quantity of United States currency to Appellant[]. After receiving the cash, [Appellant] walked across Mount Vernon [S]treet and towards the passenger side of a parked minivan and Young stayed on location with Bolten. A short time later, Appellant[] returned back to … Young and Bolten … and gave Bolten an unknown small object with a hand to hand motion. During the transaction, Young was seen looking around several times. Officer Stewart relayed information to his back up officers and Bolten was stopped a short distance away from where the transaction took place. Police recovered three (3) blue heat sealed Ziplock packets from Bolten which tested positive for crack cocaine. In this first transaction, Appellant[] was the "seller-bank[,"] Young was the "lookout" and Bolten was the "buyer[."]

After the Bolton [*sic*] sale, Officer Stewart observed Appellant[] get into a gold color Buick and drive away and Stewart lost sight of him. During this time, Young remained at the location. [Appellant] returned about fifteen to twenty (15-20) minutes later and went back on location on the same side of the street as Young.

Shortly after [Appellant's] return, a second transaction took place at approximately 8:50 p.m. In the second transaction, Officer Stewart observed a black female, later identified as Darnero Pembleton[,] approach … [Appellant] and Young and engage them in a brief conversation. Pembleton then gave an unknown quantity of United States currency to Young. During this transaction, Young walked across the street on the passenger side near the same minivan that Appellant had walked to during the first transaction and [Appellant] stayed with Pembleton. A short time later, Young[] returned back to [Appellant] and Pembleton and gave Pembleton an unknown small object with a hand to hand motion. During the second transaction, [Appellant] was seen looking around several times. [Officer] Stewart again relayed information to his back up officers and Pembleton was stopped. Police recovered two (2) blue heat sealed Ziplock packets from Pemberton [*sic*] which tested positive for crack cocaine. In the second transaction, [Appellant] was the "lookout[,"] Young was the "seller" and Pemberton [*sic*] was the "buyer[."]

The drugs and packaging of the drugs that were recovered from Buyer-Bolton [*sic*] were the same color, shape and size as

the [drugs and] packaging of the drugs that were recovered from Buyer-Pemberton [*sic*].

At approximately 9:00 p.m.[,] Officer Stewart observed Appellant[] begin counting an unknown quantity of United States currency. Flash information was given to [Officer] Stewart's back[]up officers and [Appellant] and Young were arrested on location. Police recovered $441 from [Appellant's] front pants pocket and $70 from Young.[1] Officer Stewart identified [Appellant] and Young on location and later identified Bolton [*sic*] and Pemberton [*sic*] at police headquarters. No drugs were recovered from either [Appellant] or Young or the parked minivan near where [Appellant] and Young were seen going…. Officer Stewart is an experienced narcotics officer and had been assigned to the Narcotics Strike Force for fourteen (14) years prior to this arrest.

Trial Court Opinion (TCO), 5/7/13, at 2-4 (citations to the record omitted).

Appellant argues that because no drugs were found near the minivan, or in his or Young's actual possession, it was pure speculation to infer that Bolten and Pembleton acquired the drugs from Appellant and/or Young. Appellant's argument disregards our standard of review. Namely, we must view the evidence in the light most favorable to the Commonwealth and accept all reasonable inferences that can be drawn therefrom.

In addition, … the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances.

---

[1] Regarding the denominations of the money recovered from Appellant, Officer Stewart testified "[i]t was $100 bill, one $50 bill, nine $20 bills, three $10 bills, five $5 bills, and 56 $1 bills." N.T. Trial, 12/11/12, at 44.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014 (Pa. Super. 2002) (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000)).

Applying these standards to the above-stated facts, it was reasonable for the trial court, as the fact-finder, to infer that Appellant accepted money from Bolten, retrieved packets of crack cocaine from near the minivan, and handed those drugs to Bolten. Young then did the same with Pembleton, resulting in both Bolten's and Pembleton's possessing drugs in the exact same type of packaging. While neither Appellant nor Young possessed drugs at the time they were arrested, Appellant did have a large quantity of cash in small denominations on his person. This fact, combined with Officer Stewart's observations of the hand-to-hand transactions, were sufficient to prove that Appellant constructively possessed the drugs recovered in Bolten's and Pembleton's possession. Thus, Appellant's convictions for possession of a controlled substance and PWID must stand.

Appellant next challenges his conviction for criminal conspiracy.

A conviction for criminal conspiracy requires the trier of fact to find the following: (1) that the defendant intended to commit or aid in the commission of a criminal act; (2) that the defendant entered into an agreement with another, i.e., the co-conspirator, to engage in a crime; and (3) that the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. *See Commonwealth v. Murphy*, 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004); *see also*, 18 [Pa.C.S.] § 903(a). "The essence of a criminal conspiracy ... is the agreement made between the co-conspirators." *Murphy,* 577 Pa. at 292, 844 A.2d at 1238. The nature of the offense is such that more often than not there is no

direct evidence of the defendant's criminal intent or the conspiratorial agreement. *See id.* "Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.* (citation and internal quotation marks omitted); *see also, Commonwealth v. Ruiz*, 819 A.2d 92, 97 (Pa. Super. 2003) ("The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.").

*Commonwealth v. Little*, 879 A.2d 293, 298-299 (Pa. Super. 2005).

Appellant's entire argument regarding the sufficiency of the evidence to sustain his conspiracy conviction consists of the following two sentences:

There was also insufficient evidence, circumstantial or direct, adduced at trial, to prove beyond a reasonable doubt that [Appellant] had a conspiracy or agreement with Mr. Young to possess cocaine with the intent to deliver it, even taking into account the "relations, conduct or circumstances" of these two individuals or "overt acts." Most of the interaction between these two men involved merely standing together[] on the north side of the 3300 block of [Mount] Vernon Street.

Appellant's Brief at 12.

Appellant's argument is not only undeveloped, but it is unconvincing in light of the above-stated facts, which reasonably support the inference that Appellant and Young worked together to sell drugs to Bolten and Pembleton. Both men stood together on the street as Bolten and Pembleton approached. Appellant accepted money from Bolten and engaged in a hand-to-hand transaction with him, and seemingly acted as a lookout when Young did the same with Pembleton. Both Bolten and Pembleton possessed drugs packaged in the exact same manner after their interactions with Appellant

and Young, and Appellant possessed a large quantity of cash in small denominations. Based on these facts, it was reasonable for the court to infer that Appellant and Young intended, and agreed, to perpetrate the crime of PWID, and that they both committed overt acts in furtherance of that offense. Accordingly, Appellant's criminal conspiracy conviction also must stand.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2015